CASE 71—ORDINARY—DECEMBER 6, 1883.

# E. H. Taylor, Jr., v. Thomas Farmer.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. Error in requiring answer to be paragraphed is not available if both paragraphs do not constitute a defense.

2. Composition under bankrupt act is no discharge of debt created by *actual fraud*.

3. Acceptance of *pro rata* under composition forced upon creditor not joining in or agreeing to composition, operates as a credit only to that extent on the debt.

4. In pleading composition it is necessary to allege the terms of composition, and that they were *strictly* complied with.

5. Conjunctive denial is not good.

6. A sale of whisky and delivery of second warehouse receipts to innocent purchaser without informing him of issual of former receipt to another person, constitutes *actual fraud*.

7. It is immaterial whether the fact of issuing a previous receipt is wilfully or intentionally concealed. Such fact is material and should have been disclosed. Nor can vendor relieve himself from failure to disclose by an agreement with the holder of the first receipt which he construes to authorize the sale.

W. LINDSAY AND A. DUVALL FOR APPELLANT.

1. The court erred in requiring appellant to paragraph his answer. (6 Bush, 38.)

2. Under section 5,117 of bankrupt act the fraud must be actual or intentional fraud in the creation of the debt. Legal or constructive fraud not sufficient. (Wilmot v. Mudge, 13 Otto, 217; 1st Sess. Acts 1869, page 56; Neal v. Clark, 5 Otto, 704; Henneguier *et al* v. Clews *et al*, 77 New York, 427; Rowe v. Guilliams, 18 How., N. Y.; Farmer v. Gregory & Stagg, 78 Ky., 475; Supp't to U. S. Rev. Stat., vol. 1, page 74.)

J. & J. W. RODMAN FOR APPELLEE.

1. The plea of composition in bankruptcy is fatally defective *in re* (Shield, 15 B. R., 582 S. C., 4 C. L. J., 557; S. C., 24 Pitts, L. J., 190; Bump's Law and Practice in Bankruptcy pages 695–686; William O. Denney v. Lucius Manfield, 128 Mass. 228.)

2. The answer is defective because the denials are in the conjunctive. (See *in re* Smith's 3 N. B. R., 98 Bigelow on Fraud, 84.)

3. Suppression of the truth constitutes actual and intentional fraud, and the debt is not avoided by the composition. (Hill v. Gray, 1 Stokes, 434; Laidlow v. Organ, 2 Wheat, 178; Ferebee v. Gordon, 13 Ind., 350; Bean v. Herrick, 12 Me., 262; Barnard v. Duncan, 38 Mo., 170; Dean v. Morey, 33 Iowa, 120; Brown v. Gray, 6 Jones, N. C., 103; Turner v. Huggins, 14 Arkansas, 21; Singleton v. Kennedy, 9 B. M.. 222; Kent's Com's, 2d vol., p. 482; Vanarsdale v. Howard, 5 Ala.. 596; Truebody v. Jacobson, 2 Col., 269; Peebles v. Stephen, 3 Bibb,. 324; Beard v. Campbell, 2 A. K. Marshall, 125; Kerr on Fraud, 94– 95, 124; Wood v. Wood, 78 Ky., 624; Bigelow on Fraud, 35–36.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Farmer bought one hundred barrels of whisky from Taylor, who executed to him a warehouse receipt therefor, and to whom he paid $2,985, the purchase price of the whisky. Before Farmer bought the whisky Taylor had issued a warehouse receipt for seventy-nine barrels of the same whisky to Gregory & Stagg. In a controversy begun soon after the discovery by Farmer of the existence of the warehouse receipt which Taylor had issued to Gregory & Stagg, they succeeded in establishing their claim to the seventy-nine barrels as superior to that of Farmer.

He then brought this suit against Taylor, alleging the facts recited, and that Taylor had fraudulently concealed from him the sale of the seventy-nine barrels and the issuance of the warehouse receipt therefor to Gregory & Stagg, and failed to inform him of the encumbered condition of the whisky; that Taylor was informed of the legal controversy between Gregory & Stagg and the plaintiff, and testified that he had no authority from Gregory & Stagg to issue the warehouse receipt to the plaintiff. Upon these facts the. plaintiff demanded judgment for damages sufficient to repay him the sum he had paid for the whisky, with interest, and his expenses, except attorneys' fees, in prosecuting his suit against Gregory & Stagg. To the petition Taylor demurred, and the court having overruled it, he answered, pleading

that he had become an involuntary bankrupt, and had made a composition with his creditors by their vote, in number and manner required by the bankrupt law ; that the plaintiff had proved his claim, and had been tendered his share of the composition, to be paid in cash, being *six* cents on the dollar, and notes for the deferred installments at 120 and 240 days, each being for *seven* cents on the dollar, with Gregory & Stagg, who had been *approved as sureties*. He then proceeds to deny all fraudulent *motive*, but does not deny in the disjunctive the allegation that he had suppressed from Farmer the facts that he had both sold the seventy-nine barrels to Gregory & Stagg and issued to them a warehouse receipt therefor.   He denied that he had fraudulently concealed from plaintiff notice of *"the fact* that he, defendant, had previously *sold said whisky* AND *issued a warehouse receipt for the same to Gregory & Stagg,* OR *that he concealed* OR *suppressed said fact at all,"* and denied that he had admitted he had no authority from Gregory & Stagg to sell the whisky, but says he admitted that he had no authority from them to sell, except such as was given him by a written memorandum then before him, and which this court has decided was an authority to sell.   (See 78 Ky., 624.)   He does not allege that he informed Farmer of the existence of the memorandum, or the warehouse receipt to Gregory & Stagg, when he sold him the whisky.

In explanation, however, of his motive, he avers that he considered that the memorandum gave him authority to sell, and that he only hypothecated the whisky to Gregory & Stagg for advances, and believed he would be able to pay them off and make perfect the title of Farmer.   The court unnecessarily compelled Taylor to paragraph his answer, and then sustained Farmer's demurrers to each paragraph.

If, therefore, the answer as a whole presents a defense, the demurrers should have been overruled. That is the question, and the only question, necessary to be determined. The answer fails to show any legal composition that would defeat the action, because the debt is alleged to have been created by fraud, and as the facts constituting the fraud are not legally denied, the plaintiff's allegations must be taken as true ; and the bankrupt law (sec. 5117) declares the dividends on such debts shall only be a payment on account of them, but no such debts *"shall be discharged by proceedings in bankruptcy."*

The dividend mentioned in that section embraces those sums which may be declared, from time to time, as the *pro rata* shares of the creditors, whether those shares are the result of composition, or any other mode of ascertaining them, according to the terms of the bankrupt law. And even if Farmer had *accepted* the share forced or voted upon him by a majority or two-thirds of the creditors, it was only a dividend so far as he was concerned, unless he had joined in the composition and agreed to Taylor's discharge from his debt.

Besides this view of the case, Taylor failed to allege that this composition was for the purpose of discharging him from debts which could not be discharged by proceedings in bankruptcy, and it clearly appears from his averments that it was simply a mode of ascertaining, in the cheapest and best way, the dividends his estate would pay, so that he might be discharged in bankruptcy from such debts of which it declares he may be relieved, and no other. Nor does he aver that the surety tendered on the composition notes were either good or solvent. They may have been approved, yet, within the knowledge of Taylor, perfectly

worthless; therefore such an allegation is not an averment of solvency, which was as essential to a proper tender of the notes as genuine money was to the tender of the cash part of the alleged composition.    So that he failed to allege sufficiently a counter claim or payment, or credit, to the extent of the composition, which should have been complied with in reference to all the creditors, but it is not even alleged that he paid any of them.    No discharge can lawfully follow a composition unless the terms of it are strictly complied with and the amount distributed or secured.

For aught that appears in the answer, none of the creditors may have been paid or secured, and the composition may have been the result of a fraudulent vote of friendly creditors, who were to receive more than the composition as a consideration for forcing the unwilling minority to take less than the estate was able to pay.    The answer should have closed the door upon such inferences by stating the facts, which would have shown a *bona fide* and legally effected and existent composition.

It may be possible that Taylor's motives were pure from his explanation of the memorandum, and his supposed ability to pay the advances of Gregory & Stagg, but such an explanation in law is no denial of the charge that he suppressed essential facts, which, had he disclosed to Farmer, would have put the latter upon his guard and enabled him to protect himself.    The charge is that Taylor, when he sold to Farmer, fraudulently suppressed the facts that he sold the whisky to Gregory & Stagg, and that he also issued a warehouse receipt to them for it.    He denies that he did both fraudulently, and denies that he sold the whisky to them, but he does not deny that he withheld from Farmer *the fact* of the sale, or the fact of the issuance of the ware-

E. H. Taylor, Jr., v. Thomas Farmer.

house receipt to Gregory & Stagg.  He only denies that he did so fraudulently.

His conjunctive denial of the fraudulent suppression of the sale *and* the existence of the receipt, is no denial in law of either, for he may have done one, but not both, and as he leaves it in doubt and uncertainty which he means to deny, he must bear the consequences, for there is no aider in law to such pleading.

Leaving off the charge that he fraudulently suppressed the information from Farmer, the allegation of the facts that he had sold the whisky or had issued a warehouse receipt, which is commercial in its nature, and in the hands of an innocent holder for value would have been at least superior to a subsequent receipt, and that he failed to inform Farmer of what he had done, would have constituted a fraud in law, and no explanation of the motives of Taylor could relieve him from the consequences of his *acts*.

The last analysis of the pleadings on both sides of this case, show that Taylor first, if he did not sell, encumbered the whisky with a lien for advances and issued to non-residents a warehouse receipt, which is the holder's title and his evidence of constructive possession and of high commercial value in selling the whisky and transferring the title to it, and without disclosing these essential and very important facts to Farmer, sold to him the identical whisky for full value, even with good title, and in violation of a highly penal and criminal clause of the warehouse law, issued to him a warehouse receipt, thus doubling the evidence of title to the whisky and placing Farmer in antagonism with Gregory & Stagg, whom he had previously armed with an older and better title.  Of these facts, which would have deterred any man of ordinary judgment from parting with full value for

the whisky, Farmer was wholly ignorant, and permitted so to remain by Taylor, although prudence, fair dealing, and the plainest dictates of business honor demanded of him that he should inform Farmer of the facts, and in their light let him act for himself. The failure to disclose the facts alluded to, which transpired between Taylor and Gregory & Stagg before the sale to Farmer, was, according to principle and authority, an actual fraud, which can not be avoided by allegations of honest motives, or escaped by misinterpretation of their meaning, or the supposed power of Taylor, at the time of his failure to speak, to ward off their ruinous effects, which afterwards fell upon Farmer. (2 Kent, 482; *in re* Smith, 3 N. B. R., 98; 3 Bibb, 324; 2 A. K. Marshall, 125.)

It is wholly immaterial whether Taylor wilfully or intentionally concealed those facts, or intended to defraud Farmer at the time, for the facts were material to the transaction, and they were such as ought to have been disclosed, because Taylor must be considered as knowing that Farmer was acting on the presumption that no such facts existed, and the pleadings of Taylor show that Farmer had not the slightest suspicion that the whisky, when he bought it, was sold, encumbered or receipted to any one else. For these reasons the action of the court in sustaining the demurrers to the answer was proper, and there being no error in instructing the jury, or their assessment of the damage which embraced the amount Farmer paid Taylor for the whisky, with interest and the costs and expenses, save attorney's fees, he incurred in defending and asserting his claim to the whisky under Taylor's receipt, the judgment is affirmed.